In re EQUIPMENT SERVICES,
INC., Debtor.

In re Nancy Starr, Debtor.

Bankruptcy Nos. 7–98–
04851, 7–99–00905.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Sept. 21, 2000.

John M. Lamie, Browning, Lamie & Sharp, P.C., Abingdon, VA, Counsel for Equipment Services, Inc., and Nancy A. Starr, Debtors.

Robert E. Wick, Bristol, VA, Trustee for Equipment Services, Inc.

William Edward Callahan, Jr., King, Higgs & Callahan, Roanoke, VA, Trustee for Nancy A. Starr.

Margaret K. Garber, Office of U.S. Trustee, Roanoke, VA, Counsel for United States Trustee.

## JOINT MEMORANDUM OPINION

WILLIAM F. STONE, Jr., Bankruptcy Judge.

The matters before this Court are the motions of Debtors' counsel for compensation for services rendered by counsel after these cases had been converted from Chapter 11.

## BACKGROUND

*In re Equipment Services, Inc.*

On December 24, 1998, Equipment Services, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* Debtor's counsel, Mr. John Lamie, was counsel for the Debtor–in–Possession at the time of filing the petition and his continued employment was approved by Order of this Court dated January 26, 1999. In the Rule 2016 Disclosure, Debtor's counsel certified that he had received a $5,000 retainer.[1]

---

1. No written retainer agreement appears to have been entered into between the Debtor and Debtor's counsel.

On March 17, 1999, by motion of the United States Trustee ("U.S. Trustee"), this case was converted to one under Chapter 7. After conversion, the U.S. Trustee appointed Robert E. Wick, Jr., as interim trustee. No trustee was elected at the meeting of creditors and Mr. Wick became the permanent Chapter 7 Trustee. Mr. Wick continues to administer the Debtor's case.

On June 5, 2000, Debtor's counsel filed an Application for Fees seeking compensation for services rendered and expenses incurred from December 24, 1998, the filing date of the Debtor's Chapter 11 petition, through May 31, 2000, a date more than fourteen months after conversion of the Debtor's case to one under Chapter 7. The U.S. Trustee objected to the Application for Fees to the extent that the Application sought compensation for services rendered after the case was converted to one under Chapter 7 on March 17, 1999.[2] A hearing was held on this matter on July 6, 2000. At the hearing, the parties were provided an opportunity to submit written arguments to this Court.

*In re Nancy Starr*

On March 16, 1999, Nancy Starr ("Starr") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101 *et seq.* Mr. Lamie was counsel for Starr at the time of filing the petition and his employment continued after conversion of Starr's case to one under Chapter 7. In the Rule 2016 disclosure, Starr's counsel certified that he had received a $950 retainer.[3] At the time of filing his Application for Fees, Starr's counsel held $880 in trust.

On December 8, 1999, by motion of the U.S. Trustee, this case was converted to one under Chapter 7. On February 23, 2000, William E. Callahan, Jr., was appointed Chapter 7 Trustee at the meeting of creditors pursuant to 11 U.S.C. § 341.

On June 28, 2000, Starr's counsel filed an Application for Fees seeking compensation for services rendered from March 12, 1999, a date prior to the filing date of Starr's Chapter 11 petition, through June 28, 2000, a date more than six months after conversion of Starr's case to one under Chapter 7. The Trustee objected to the Application for Fees to the extent that the Application sought compensation for services rendered after the case was converted to one under Chapter 7 on December 8, 1999.[4] A hearing was held on this matter on August 8, 2000.

## ARGUMENTS OF COUNSEL [5]

The U.S. Trustee raises two objections to an award of attorney's fees to Debtor's counsel for services rendered after conversion of the Debtor's case to one under Chapter 7. First, the U.S. Trustee, citing the exclusion of debtors' attorneys from the list of persons eligible for compensation from the property of the estate under

---

2. In the absence of objection to the Application for Fees to the extent that it sought compensation for services rendered and expenses incurred prior to the conversion of this case to one under Chapter 7, this Court approved the Application for Fees by Order dated July 10, 2000. Accordingly, Debtor's counsel has been awarded $1,325.00 for services rendered plus costs in the amount of $3.85.

3. No written retainer agreement appears to have been entered into between Starr and Starr's counsel.

4. In the absence of objection to the Application for Fees to the extent that it sought compensation for services rendered and expenses incurred prior to the conversion of this case to one under Chapter 7, this Court approved the Application for Fees by Order dated August 9, 2000. Accordingly, Starr's counsel has been awarded $3,600.00 for services rendered plus costs in the amount of $15.84.

5. Because the arguments of the U.S. Trustee and Trustee that are relevant to this decision are the same, and because the arguments of the U.S. Trustee have been fully briefed, this Court will refer to the arguments of the U.S. Trustee and the response of counsel for the Debtors thereto in rendering its decision in both matters before this Court.

11 U.S.C. § 330(a)(1),[6] disputes the claim of Debtor's counsel that he is entitled to be compensated for services rendered after the conversion of the Debtor's case to one under Chapter 7. Second, the U.S. Trustee denies the right of Debtor's counsel to be compensated for services rendered after conversion from the funds held in trust by Debtor's counsel from the pre-petition retainer. The U.S. Trustee contends that the funds held in retainer were property of the Debtor prior to conversion and accordingly, became property of the estate at the time of conversion of the Debtor's case to one under Chapter 7. Because awards of compensation from property of the estate are governed by 11 U.S.C. § 330, the U.S. Trustee asserts that Debtor's counsel is not eligible to be compensated from the funds held in retainer.

Conversely, Debtor's counsel contends that § 330(a)(1) does not preclude his being compensated for services rendered after the conversion of the Debtor's case to one under Chapter 7. Additionally, Debtor's counsel denies that the funds held in retainer at the time of conversion of the Debtor's case were rendered property of the estate at the time of conversion and therefore not available to compensate Debtor's counsel. Instead, Debtor's counsel claims the funds held in retainer remained property of the Debtor. Therefore, the award of compensation to Debtor's counsel is governed by § 329,[7] which

allows the awarding of fees to counsel from property held by debtors, rather than by § 330.

## DISCUSSION

In answering the question of whether Debtor's counsel is entitled to compensation for services rendered after conversion of the Debtor's case to one under Chapter 7 from the funds held in retainer, the Court must decide two questions:

1. Whether an attorney can be paid from the bankruptcy estate for services rendered to the Debtor in Chapter 7; and

2. If not, whether the unearned balance of a pre-petition retainer, as of the time of conversion, is part of the bankruptcy estate.

The Court will address these two questions in the order stated.

I. An attorney may not be paid from the bankruptcy estate for services to be rendered to the Debtor in a Chapter 7 case.

■ While this Court notes with respect the recent opinion of Judge Brinkema of the United States District Court for the Eastern District of Virginia in *In re Taylor*, 250 B.R. 869 (E.D.Va.2000), which held that a debtor's attorney in a Chapter 7 case can be compensated from property of the estate for services which are beneficial to the estate, and the decisions to such effect of the Second Circuit Court of Ap-

6. 11 U.S.C. § 330(a)(1) provides, "After notice to the parties in interest and the United States Trustee and a hearing, and subject to Sections 326, 328, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103–(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person; and (B) reimbursement for actual, necessary expenses."

7. 11 U.S.C. § 329 provides, "(a) Any attorney representing a debtor in a case under this title, or in connection with such case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed

to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to-

(1) the estate if the property transferred(A) would have been property of the estate; or (B) was to be paid by or on behalf of the debtor under a plan under Chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment."

peals[8] and the Ninth Circuit Court of Appeals,[9] the latter having rendered its decision subsequent to the decision of Chief Bankruptcy Judge Ross W. Krumm of this Court in the case of *In re Skinner*, 240 B.R. 225 (Bankr.W.D.Va.1999), which held to the contrary, the Court believes it should adhere to the *Skinner* ruling. It concludes that it should do so for two good reasons: first, such ruling is based on the most logical and apparent interpretation of the effect of the 1994 amendment of § 330 of the Bankruptcy Code, and second, uniformity of result within this District in an issue of importance in almost every Chapter 7 case, whether originally filed as such or converted from another chapter, is an important and worthy goal in and of itself. While the Court will treat the value of the second reason, uniformity of decision within this District, as self-evident, it believes that some comment on the correct meaning of § 330 is warranted.

To understand fully the conclusions of those courts which have held that an attorney rendering services to a Chapter 7 debtor cannot be paid from the bankruptcy estate, it is helpful to compare the language of § 330 of the Code before and after the 1994 amendment of that section. Both before and after the 1994 amendment of § 330, such section provided and continues to provide express authority for payment of counsel to a Chapter 12 or 13 debtor from the estate "based on a consideration of the benefit and necessity of such services to the debtor and other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). To state the obvious, Congress could have provided that a debtor's attorney in any bankruptcy proceeding could be paid from the estate.[10] It did not choose to do so even though compelling policy arguments might be marshaled in support of such a provision. With regard to a Chapter 7 debtor's attorney, prior to 1994 § 330(a)(1) provided as follows:

> After notice to any parties in interest and to the United States Trustee and a hearing and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, an examiner, to a professional person employed under section 327 or 1103 of this title, *or to a debtor's attorney*- (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, *or attorney*, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for actual, necessary expenses. (emphasis added)

After the 1994 amendment to such section, it read and still reads as follows:

> After notice to the parties in interest and the United States Trustee and a hearing subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103–(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, *or attorney* and by any professional person employed by an such persons; and (B) reimbursement for actual, necessary expenses. (emphasis added)

11 U.S.C. § 330(a)(1).

In *Taylor*, the District Court chose to adopt the minority position rejected by the Bankruptcy Court in *Skinner*, finding § 330(a)(1) to be ambiguous in its exclusion of debtors' attorneys from "the list of

---

8. *In re Ames Dep't Stores, Inc.*, 76 F.3d 66 (2nd Cir.1996).

9. *In re Century Cleaning Services, Inc.*, 195 F.3d 1053 (9th Cir.1999).

10. The authority for payment of counsel for a Chapter 11 debtor to be compensated from the estate while the debtor is a "debtor-in-possession" is based on the right of the debtor-in-possession as trustee to retain legal counsel. 11 U.S.C. §§ 327(a) and 1107(a).

persons in § 330(a)(1) to whom compensation may be awarded" due to the missing conjunction "and" or "or" "before the penultimate person listed." The District Court further supported its finding by noting the "logical inconsistency" between § 330(a)(1) and § 330(a)(1)(A). While § 330(a)(1) provides for the awarding of compensation to "a trustee, an examiner, a professional person employed under section 327 or 1103", Section 330(a)(1)(A) allows those persons specified in (a)(1) to be awarded "reasonable compensation for actual, necessary services rendered by a trustee, examiner, professional person, or attorney ..." This inconsistency, the District Court concluded, created a further ambiguity in the Bankruptcy Code because § 331 permits payments from the bankruptcy estate of interim compensation for "[a] trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103." 11 U.S.C. § 331. Based upon these apparent ambiguities, the District Court chose to look beyond the statute itself to the legislative history of the statute. Prior to the Bankruptcy Reform Act of 1994, Section 330 provided for the award of fees to debtors' attorneys. Nothing in the legislative history of the Act explains why such provision was omitted from the current version of § 330(a)(1). The District Court chose to grasp this absence of legislative history as an opportunity to define the omission as inadvertent and therefore appropriate to disregard in its effort to interpret the present language of §. 330(a)(1). Accordingly, the District Court, upon holding that § 330(a)(1) did not preclude the Bankruptcy Court from awarding the debtor's attorney post-petition fees, remanded the matter to the Bankruptcy Court for determination of which fees were of benefit to the estate and therefore eligible for compensation.

In addition to the reasoning expressed by Chief Judge Krumm in *Skinner*, this Court rejects the District Court's holding in *Taylor* and the minority position adopted therein for the following reasons. First, though grammatically awkward and arguably internally inconsistent with § 330(a)(1)(A), the current version of § 330(a)(1) is the result of a deletion by Congress that resulted in a statute which is clearly at odds with its pre-amendment version. *See In re American Steel Product, Inc.*, 197 F.3d 1354, 1356 (11th Cir. 1999); *In re Pro–Snax Distributors, Inc.*, 157 F.3d 414, 425 (5th Cir.1998). Although the absence of legislative history and a brief review of the syntax of the statute might indicate that such deletion was inadvertent, the governing canons of construction do not allow this Court to consider extrinsic sources in interpreting § 330(a)(1).[11] *In re Pro–Snax Distributors, Inc.*, 157 F.3d at 425. Even if this Court were to conclude, however, that the deficiencies noted by Judge Brinkema in *Taylor* rendered the statute ambiguous, the absence of legislative history is open to two equally plausible interpretations, that the deletion of the language relating to the "debtor's attorney" was the result of clerical error, or that it was intentional on the part of the person or persons who directed its deletion for reasons known to him, her, or them and that such deletion simply passed through the legislative process without being particularly noticed or commented upon by those members of Congress who might have decided either to support or oppose such change. In the absence of legislative history or other evidence which would suggest clearly that the deletion was simply the result of clerical error, this Court cannot conclude that it should treat the statutory change as if it had not occurred. Furthermore, this Court notes the absence of a subsequent technical correction by Congress during

11. This Court's finding that § 330(a)(1) is clear and unambiguous on its face precludes this Court from giving persuasive weight to the absence of legislative history regarding the deletion of debtor's attorney from the list of persons eligible for compensation pursuant to § 330(a)(1). *See In re Pro–Snax Distributors, Inc.*, 157 F.3d at 425.

the six years since the revision of § 330(a)(1),[12] despite substantial commentary on the subject and a general willingness of Congress to adopt such corrections when deemed necessary.[13]

Second, Section 330(a)(1) and § 331 are not inconsistent so as to render § 330(a)(1) ambiguous. The District Court cites § 331's allowance for debtors' attorneys to receive interim fees as support for the proposition that debtors' attorneys must be eligible for fees generally. However, the District Court failed to quote the pertinent language of § 331 in its entirety. Although the list of persons deemed eligible for interim compensation pursuant to § 331 includes debtors' attorneys, the District Court failed to mention the remainder of the language of § 331 which makes any award of interim compensation subject to § 330. Specifically, Section 331 states, in relevant part:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such application or reimbursement for expenses incurred before such date *as is provided under section 330 of this title*. (emphasis added)
>
> 11 U.S.C. § 331

Upon a further reading of § 331, it becomes apparent that § 331 cannot be read independently of § 330. *See* 3 Collier on Bankruptcy ¶ 331.01[4] at 331–7. Because § 330(a)(4)(B) expressly allows for compensation of attorneys representing individual debtors in cases under Chapters 12 and 13, Section 331 must include debtors' attorneys so as not to bar awards of interim compensation to individual debtors' attorneys in cases under Chapters 12 and 13. Also, it is worth noting that some courts have denied the applicability of § 331 to Chapter 7 and Chapter 11 liquidation cases altogether, making any reference thereto irrelevant in matters of the sort at hand. *See In re Glados*, 83 F.3d 1360, 1365–66 (11th Cir.1996) (dicta); *In re Regan*, 135 B.R. 216, 218–19 (Bankr.E.D.N.Y.1992) (holding that professionals for a chapter 11 debtor-in-possession, which had been displaced by a Chapter 7 trustee, could not request interim compensation for services rendered while the case was under Chapter 11 to be paid during the pendency of the Chapter 7). *See also In re Domino Investments, Ltd.*, 82 B.R. 608, 609 (Bankr. S.D.Fla.1988).

II. The unearned balance of a pre-petition retainer, as of the time of conversion to Chapter 7, is not part of the bankruptcy estate.

 Subject to § 329, a retainer is an arm's length pre-petition transfer for services being rendered currently and to be rendered in the future. While a client may terminate an attorney's representation and recover back the unearned portion of funds held in retainer, the client cannot retain the benefit of the services being rendered and yet to be rendered by

---

**12.** This Court notes that the current proposed Bankruptcy Reform Act of 2000, H.R. 833, 106th Cong. (2000), pending in the House of Representatives, makes no correction to § 330(a)(1) but does propose to amend § 330(a)(3) to read, "[i]n determining the amount of reasonable compensation to be awarded, to an examiner, trustee under Chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors..." Bankruptcy Reform Act of 2000, H.R. 833, 106th Cong. § 409 (2000).

**13.** For example, Congress has enacted subsequent corrective legislation to cure errors in the Internal Revenue Code that arose from prior amendments and revisions thereof. One such piece of corrective legislation, aptly titled the Technical Corrections Act of 1982, Pub.L. No 97–448, 96 Stat. 2365 (codified as amended in scattered sections of 26 U.S.C.), served to cure errors in the Internal Revenue Code that arose from the Economic Recovery Act of 1981, Pub.L. No. 97–34, 95 Stat. 172 (codified as amended in scattered sections of 26 U.S.C.).

the attorney and at the same time demand a refund of the current unearned balance of the retainer. Only to the extent that a balance remains in the retainer after all services have been rendered and fees have been allowed under § 329 does the reversionary interest of the debtor in that balance become property of the bankruptcy estate.

Section 541(a) of the Bankruptcy Code states in relevant part that, "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate ... comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Fourth Circuit Court of Appeals stated in *Mid–Atlantic Supply Co. of Va. v. Three Rivers Aluminum Co. (In re Mid–Atlantic Supply Co.)*, 790 F.2d 1121, 1124 (4th Cir. 1986), that "property of the estate" should be construed broadly. Property of the estate has been interpreted to include "property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced". *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515, 522 (1983) (holding that the bankruptcy estate included property of the debtor which the Internal Revenue Service had lawfully seized before bankruptcy but had not sold prior to filing, noting that the property continued to be owned by the taxpayer until the sale had been effected). However, Section 541(a), while defining "property of the estate" to include all interests of the debtor, does not define those specific interests. To make that determination, it is necessary to examine relevant state law. *In re Prudoff*, 186 B.R. 64, 66

(Bankr.E.D.Va.1995). The *Prudoff* case dealt with a note which a debtor had assigned pre-petition to an attorney to represent the debtor in a domestic relations case. The amount of the note exceeded $80,000 and the retainer agreement provided that the note was assigned absolutely to the attorney and the client's only interest was to any balance collected and not used for legal fees or expenses. The obligor of the note prepaid it and the attorney disbursed to the debtor post-petition in excess of $25,000 from the proceeds of the note. The Trustee brought a turnover action against the debtor and the court ruled that the debtor's interest in any refund from the retainer was property of the estate and the debtor was obliged to pay over the money received from the attorney to the trustee.

Virginia law offers no exception to the general rule that a retainer taken by a debtor's attorney for services to be rendered during the bankruptcy is to be held in trust for the debtor. Pursuant to Rule 1.16(d) of the Virginia Rules of Professional Conduct,[14] an attorney is required, *upon termination of representation*, to refund any advance payment of fees that has not been earned. Rules of the Supreme Court of Virginia Part 6, § II. Additionally, Rule 1.15(a)[15] requires that all funds received or held by an attorney or law firm on behalf of a client, including refundable retainers, be deposited into an escrow account. In furtherance thereof, Rule 1.15(d)(3)[16] mandates first, that an attorney maintain complete records of all funds of a client coming into possession of the attorney and render appropriate accounts to the client regarding those funds and second, promptly pay or deliver to the client as requested the funds in possession

14. Paragraph (d) of Rule 1.16 is based on DR 2–108(D) of the Virginia Code of Professional Responsibility, the predecessor to the Virginia Rules of Professional Responsibility.

15. Paragraph (a) of Rule 1.15 is substantially the same as DR 9–102(A) of the Virginia Code of Professional Responsibility.

16. Paragraph (d) of Rule 1.15 has no counterpart in the Virginia Code of Professional Responsibility.

of the attorney to which the client is entitled. *Id.* Although these Rules of Professional Conduct appear to indicate that property held by an attorney is held in trust for the benefit of the client, giving the client an equitable interest therein, these Rules do not state or imply that the client's equitable interest extends to funds which have been earned by the attorney. *Compare In re Downs,* 103 F.3d 472 (6th Cir.1996) (holding that property held by an attorney is held in trust for the client's benefit, and the debtor's equitable interest in the trust is property of the estate).

 This Court believes that a debtor's interest in a pre-petition retainer might be appropriately compared with other property interests a debtor may have as of the filing date which become assets of the bankruptcy estate. For example, if a debtor has paid, immediately preceding his filing, an annual insurance premium, the unearned portion of the premium as of the filing date may well be an asset of the bankruptcy estate, but unless some action is taken to cancel the policy prior to the end of the period of coverage in question, the estate cannot obtain a refund from the insurer, regardless of whether the policy in question or the property or interest it insured was an asset of the bankruptcy estate. Similarly, if a debtor has obtained pre-petition a line of credit secured by a lien against the debtor's property, such property becomes an asset of the estate subject to the existence of the lien. Assuming any necessary court approval for post-petition continued use of such line of credit, the bankruptcy estate's interest in the property would be in its residual value after the total amount of the debt, whether pre-petition or post-petition in nature, has been paid.[17] Even without any new principal advances under such a loan arrangement, however, Section 506(b) of the Bankruptcy Code recognizes that a secured creditor, to the extent of the available value of its collateral, is entitled to recover from that property, even though such property is clearly an asset of the bankruptcy estate, post-petition interest ("earnings", if you will) upon its principal balance. Even though an attorney may be required by ethical obligations to hold a retainer in escrow or trust until the contracted-for legal services have been rendered, the Court does not believe that such requirement creates any greater property interest in the bankruptcy estate than if the attorney had been free simply to deposit the retainer in his general account subject to a potential refund obligation to the extent that the funds received from the retainer were not later fully earned. The ethical obligation imposed upon the attorney as a professional licensed by the state is for the protection of the client and should not furnish a basis to disallow in bankruptcy to an attorney the benefit of his arm's length and fair agreement with his client, subject to the Court's review authority under § 329 of the Bankruptcy Code. With due respect to the opinions of other courts that have drawn a distinction between "advance fee retainers" and "retainers for security"[18] this Court concludes that in either case it is the client's residual interest, if any, in the retainer after satisfaction of all contracted-for fees that becomes an asset of the bankruptcy estate.

While it may be difficult to reconcile the rationale of this decision with that of cases such as *In re Lilliston,* 127 B.R. 119 (Bankr.D.Md.1991), which held that a pre-petition retainer, to the extent that it was to be used for the payment of anticipated discharge and/or dischargeability litigation,

---

17. The Court notes that any approved post-petition borrowing could properly be paid from other property of the estate.

18. *See e.g. Indian Motorcycles Assoc. III Ltd. Partnership v. Massachusetts Housing Fin. Agency,* 66 F.3d 1246 (1st Cir.1995) (concluding that whether a retainer may be subject to turnover depends upon whether the retainer is paid simply to ensure the availability of an attorney or is held by an attorney to secure payment for legal services to be rendered). *See also* 3 Collier on Bankruptcy ¶ 329.04[1][d] at 329–20.

was property of the estate and had to be turned over by the attorney to the bankruptcy trustee, such facts are not present in the instant cases. The Court notes, however, that the result in such cases might be reached on the alternative ground of avoiding a debtor's pre-petition transfer to the extent that it was intended to create a post-petition benefit to the debtor personally. Under such a rationale, a very recent decision of the Ninth Circuit Court of Appeals avoided a debtor's "irrevocable" pre-petition tax election to carry forward the debtor's tax losses to apply against future income so that the trustee could file amended pre-petition returns to generate a tax refund for the benefit of the bankruptcy estate. *See In re Feiler,* 218 F.3d 948 (9th Cir.2000).

■■■ For the aforementioned reasons, this Court denies the U.S. Trustee's claim that a retainer, to the extent it exceeds the amount earned and allowed for Chapter 11 services rendered by Debtor's counsel, becomes property of the bankruptcy estate. The Court observes that while the U.S. Trustee's argument that a retainer is property of the bankruptcy estate is made in these cases which originally commenced as Chapter 11 cases but were later converted to Chapter 7, the same rationale would appear to be applicable to any original Chapter 7 case where the debtor's attorney has received a pre-petition retainer from the debtor. If such a retainer were to be subject to turnover to the Chapter 7 Trustee to the extent that it was not absorbed by filing fees and pre-petition services, a very powerful disincentive would be provided to attorneys to accept Chapter 7 cases in the first place, or to provide anything beyond the most perfunctory required post-petition services to the client in those Chapter 7 cases that were accept-

ed. Particularly in the context of a Chapter 7 corporate debtor without interested, willing, and financially able owners or affiliates, the likelihood of payment for post-petition services by the debtor's attorney precluded from relying on his retainer for payment would appear to be doubtful at best. Accordingly, this Court denies the U.S. Trustee's objection to payment of Debtor's counsel for services rendered after conversion of the Debtor's case to one under Chapter 7 from the funds held in retainer by Debtor's counsel pursuant to § 329 of the Bankruptcy Code.[19] While this Court recognizes the unsatisfactory potential consequences of a decision which places a premium upon a debtor's attorney obtaining a retainer large enough to cover in advance any and all legal services which might reasonably be contemplated during the entire case, and therefore rewards attorneys who may be more acutely protective of their own interests rather than those of their debtor clients, it believes to hold otherwise would be to disregard an express change by Congress of existing law prior to 1994. If that change was unintentional, it is up to Congress to correct it. If the change was intentional, it is the obligation of this Court to enforce it even if such change may appear to be misguided and disruptive of the functioning of the bankruptcy system.

### CONCLUSION

For these reasons, this Court respectfully declines to follow the Eastern District Court's holding in *Taylor* and instead has chosen to apply the earlier holding of this Court as expressed in *Skinner.* It further holds that only the Debtor's reversionary interest in a pre-petition retainer paid over to his, her, or its attorney, rather than the retainer in full, is property of the bank-

---

**19.** Section 329 of the Bankruptcy Code governs the eligibility of debtors' attorneys to be compensated from funds held in retainer when such funds are not property of the estate. *In re Redding,* 247 B.R. at 478; *See also* 3 Collier on Bankruptcy ¶ 329.04[1][d] at 329–19. By its own language, Section 329

merely requires that fees to be awarded from funds held in retainer be reasonable in amount, as determined by the court. Because the balance of the pre-petition retainer, as of the time of conversion, is not property of the bankruptcy estate, Debtor's counsel is eligible to receive an award of fees pursuant to § 329.

ruptcy estate. Accordingly, this Court sustains the U.S. Trustee's objection to payment of Debtor's counsel for services rendered after conversion of the Debtor's case to one under Chapter 7 only to the extent that the funds held in retainer are insufficient to cover the total fees and expenses allowed to Debtor's counsel for all services rendered in the Debtor's case. However, in rendering this judgment, this Court expressly refrains from addressing the issue of use of a pre-petition retainer to pay for services of post-petition benefit to a debtor personally, such as objections to discharge and/or dischargeability of debt litigation such as that considered in *In re Lilliston, supra,* an issue not presented in either of the cases before the Court.

Orders effectuating the opinion of this Court in these two cases shall be entered contemporaneously with the signing of this Memorandum Opinion.